## IN THE

# SUPREME COURT

## OF

# NEW JERSEY,

## APRIL TERM, 1793.

---

[153] WOOD AND WIFE v. EXECUTORS OF TALLMAN, THE
ELDER, AND WOODWARD, JUNIOR.

1. The court, in a case of *certiorari*, cannot travel out of the record; the facts are settled, and their decision can be only on the law arising from them.

2. The statute creating the Orphans' Court is remedial, and is to be liberally construed.

3. The proper course to remedy errors of fact in the proceedings of the Orphans' Court, is by appeal to the governor; errors in law are to be corrected by *certiorari* to this court.

4. By the true construction of the act creating the Orphans' Court, its jurisdiction is not restricted to "orphans or persons under twenty-one years of age."

5. A citation may issue from the Orphans' Court, as well against surviving executor as against the executor of deceased co-executor, for an account.

6. A debt due by executor to the testator, is so far assets as to come within the jurisdiction of the Orphans' Court.

7. The appointment of a debtor as executor, is not an extinguishment of the debt, as against creditors or legatees.

M                                                                177

8. The powers given by the statute to the Orphans' Court are not unconstitutional.

9. Where the judgment of an inferior court is divisible, it may be affirmed in part and reversed in part.

This case was brought before the court by *certiorari* to the Orphans' ,Court for the county of Burlington.   The facts, so far as they are necessary for the understanding the decision of the court, were as follows :

Thomas Woodward, the elder, made his testament in 1773, and appointed his son, Thomas Woodward, junior, and Tallman, senior, his executors, and died in the course of that year.   The executors proved the will, and entered upon the administration of the estate, and subsequently, Woodward, junior, one of the executors, died in 1782, and Tallman, the other, in 1784.

[154] In 1786, Wood and his wife, the present plaintiffs, claiming an interest under the will, cited the executors of Woodward, junior, and Tallman, to render a just inventory and account of the estate of Thomas Woodward, the original testator.   A hearing was had before the Orphans' Court, on the inventory and account exhibited, when the court decreed a bond of £500 to have been due from Woodward, junior, to his father, and ordered that amount to be added to the inventory.

. They further made an order upon the executors of the first executors, to render a general account of the assets which had come to the hands of their testators respectively, which statement might be either joint or several.

In November, 1786, they stated several accounts of the assets which had come to the hands of their respective testators, and these were referred to auditors to restate and report. The auditors, in their report, charge, as part of the assets which came to the hands of the first executors—

1st. The £500 decreed by the court to be added to the inventory, and not accounted for by Thomas Woodward. junior, the executor.

2d. They add to the amount of assets, as set forth in the

inventory as a charge against the same Thomas Woodward, junior, £900, which they adjudged to be due from him to his father, the testator, at the time of the death of the latter, for rents, and which the said executor had omitted in his inventory.

Exceptions were filed to the report of the auditors, and overruled in the Orphans' Court, and a decree passed against the executors for those sums.

Several points were made by the counsel for the defendants, upon the argument in this court, but the four following exceptions were principally relied upon against the decree of the court below:

1st. That citations would not lie against the executors of Woodward, junior, who died in 1782, but that the proceedings should have been against the representatives of Tallman, who survived him, and died in 1784.

2d. That the Orphans' Court cannot hold plea of debt, or try a disputed demand between the testator and executor; [155] that in this case they had taken cognizance of a mere matter of debt on bond, and for rent in demand by the testator against his son, the executor, which were disputed by the son, and not acknowledged by him to constitute assets in his hands during his lifetime, and also disputed by his executors before the Orphans' Court, and alleged not to have been due.

3d. That by making his son an executor, all debts due to the testator were extinguished.

4th. That the Orphans' Court had no jurisdiction where none of the parties was either an orphan or under the age of twenty-one years.

Kinsey, C. J., delivered an elaborate opinion upon all the points that had been raised, in which he laid down the following propositions, illustrating and establishing them by reference to numerous authorities.

That this court upon the *certiorari* cannot go out of the record before them; that the facts stated in the proceedings

of the court below were finally and decisively settled, this court being to declare the law alone arising from them. *Rex* v. *Stoughton*, 1 *Str.* 83; *Rex* v. *Lloyd*, 2 *Str.* 996; *Rex* v. *Preston, Ibid.* 1040.

The Orphans' Court is not a court of common law, but a court partaking of the powers of a chancery and prerogative jurisdiction, instituted by law to remedy and supply the defects in the powers of the Prerogative Court, with regard to the accountability of executors, administrators and guardians. It is a useful and necessary tribunal, and every construction should be given to the act which, consistently with the obvious intentions of the legislature, will advance and extend its remedial provisions. The authority given to the court by the act of December, 1784, (*Paterson* 59,) is very extensive. It is vested by the seventh section with "full power and authority" to hear and determine all disputes and controversies whatsoever respecting the existence of wills, the fairness of inventories, the right of administration, and the allowance of the accounts of executors, administrators or trustees, &c., and to award process, and to cause to come before them all [156] person or persons who, as executors, administrators, guardians, trustees, or otherwise shall be entrusted with, or in any way accountable ·for any lands, &c., belonging to any orphan or person under age." The fifteenth section directs that "wherever disputes happen respecting the existence of a will, the fairness of an inventory," &c., citations shall issue to all persons concerned; and the seventeenth section makes the settlement final to all parties, unless where "some fraud or apparent mistake" shall be proved.

With regard to the errors in the inventory, this court can have no jurisdiction or right to inquire into them; they are the subject of an appeal to the governor. So ·that, in the case before the court, all questions touching the evidence or fact of these items are out of our jurisdiction; they are not inquirable into here.

It has been contended that by the strict grammatical construction of the seventh section of the act, the words "or-

phans or persons under age," stand connected with the preceding words, and limit the jurisdiction of the Orphans' Court in all cases where one or more of the parties do not fall within this description. This is evidently a misconstruction; the preceding powers are general, and that court may exercise them in all cases of wills and inventories, &c. This has been the uniform practice, and upon any other construction the act would be almost a dead letter.

The act was not designed to diminish the jurisdiction of the Ordinary, or to institute a trial by jury, but merely to create a more respectable tribunal, with more full and perfect powers to adjust and decree upon the accounts of executors and others, with an appeal on matters of fact to the governor, and on matter of law to this court. It is essential to the jurisdiction of the court, that they should have power to issue a citation to compel an account as well against the surviving executor as against the executor of a deceased co-executor; otherwise, no account could be compelled. Each executor is liable to account for what comes to his own hands merely, (a) and there is no one case in the books to the con-[157]-trary. If we put the case, then, that the surviving executor had received nothing, or died insolvent, the assets having actually come to the hands of the executor first dying, the absurdity of the objection must be obvious. (b)

It has been strenuously argued that although the Orphans' Court may compel executors to account for assets or effects of the testator in their hands, yet they have no authority to try an action of debt; or under pretence of citing an executor to account, to try a claim for a debt which he denies that he owes, or which he alleges he has paid. It has been said that in this case the executor is as much a stranger as any

(a) See 3 *Bac. Abr.* 31, (*Wilson's edit.,*) for the law upon this point, and the numerous cases in which the doctrine laid down in the text has been recognized.

(b) See *Nicholson* v. *Sherman,* 1 *Ch. Ca.* 57, where a bill for an account was filed against surviving executor, and executor of deceased executor, and held right.

other debtor, and the Orphans' Court have no more right to adjudicate upon a claim against him by the testator, than upon a demand against any other individual. They allege that nothing is assets until recovered or reduced by the executors into actual possession, and proved to have come into his hands. But in this case neither the bond nor the rents came to Woodward, junior, as executor; but if they came to his hands at all, it was as a debtor, and these moneys cannot be charged to his account as executor, until they have been recovered by due course of law.

These doctrines cannot be recognized by us, and they are contrary to the act of assembly. The law has given the Orphans' Court full power to compel the executors to account generally, and to decree the balance due to the legatees in their hands, without restraining them in the exercise of this power to any particular kinds of claims, or subjects of controversy. There is no real difference, as regards the executor, between assets in his hands, or a debt in his hands; it is therefore, nothing more than an inquiry upon the subject of the inventory.

All the argument turns upon the objection that the executor is thereby deprived of the benefit of trial by jury; whereas, it is evident, that being both executor and debtor, no action could be instituted against him at common law to try the validity of the claim. Unless he can sue himself the [158] remedy must be against him as accountant to the legatee, either in Chancery or in the Orphans' Court, and in either case the trial by jury is equally out of his reach; by taking upon himself the trust, he knows he must account, and *volenti non fit injuria.*

With regard to the appointment as executor operating as an extinguishment of the debt, there is no difference between the rules of law and equity; they are the same. Courts of equity put the same construction on wills, statutes, legal estates and rights as courts of law, and on this point they perfectly coincide. *Selwyn* v. *Brown, Ca. Temp. Talb.* 240; 3 *Bac. Abr.* 11 (*Wils. edit.*) The rule is, that such release by operation

of law shall not take effect against a creditor or legatee, but the sum due from the executor shall remain as assets, for the payment of debts and legacies. In the case of *Selwyn* v. *Brown*, the Lord Chancellor seemed to doubt, whether a debt due from an executor should be assets for the payment of legacies; in general he rather thought it should, but held that upon an express devise of all the rest and residue, the debt would pass and not be extinguished.

It has been contended, also, that if such a power be really granted to the Orphans' Court it is unconstitutional, because the right to a jury is secured by that instrument to each individual of the community. To this, I answer, the constitution does not extend the right to trial by jury to cases which did not fall within its province before the existence of that charter. The chancery, prerogative and spiritual courts, have always proceeded without the intervention of a jury; and the Orphans' Courts, being invested with those powers as defined and limited by the act of assembly, may exercise them as before without any violation of the right to trial by jury.

It has further been contended, that this court must reverse the judgment *in toto* if there be any error. The cases that have been cited do not prove this doctrine. Wherever the objection applies to the whole and the court cannot separate the good from the bad, it is so, but not otherwise.

The decree of the Orphans' Court must be affirmed.

SMITH, J., and CHETWOOD, J., assented.

CITED *in State* v. *Mahew*, 4 *Hal.* 70; *State* v. *Hanford*, 6 *Hal.* 71; *Davison* v. *Davison*, 2 *Harr.* 179; *Scott* v. *Beatty*, 3 *Zab.* 256.

